**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: KEYSTONE DATA BREACH LITIGATION<br><br>This Document Relates To:<br>ALL ACTIONS | Master File No. 1:22-cv-01643-CCC<br><br>**DEFENDANT'S NOTICE OF REMOVAL OF ACTION UNDER 26 U.S.C. §§ 1332, 1441, 1446, and 1453**<br><br>[Franklin County Court of Common Pleas Case No. 2022-3653] |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

**PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, Defendant Keystone Rural Health Center removes Case Number 2022-3708, filed in the Franklin County Court of Common Pleas, to the United States District Court for the Middle District of Pennsylvania.

## PROCEDURAL ACTION

1. On or about November 23, 2022, Plaintiff Samuel Priego filed a Class Action Complaint against Defendant Keystone Rural Health Center ("Keystone") in the Franklin County Court of Common Pleas alleging damages arising from a data breach suffered by Keystone. *See Priego v. Keystone Rural Health Center*, Case No. 2022-3653, Franklin County Court of Common Pleas. A true and accurate copy of the complaint in the state court action is attached hereto as **Exhibit A**.

2. On November 14, 2022, pursuant to Fed. R. Civ. P. 42(a), the Middle District consolidated two earlier filed actions relating to the same data breach under the new title *In re Keystone Data Breach Litigation*, Case No. 1:22-cv-01643. Dkt. at 16. The Court also appointed Interim Co-Lead Class Counsel and directed that "[n]o motion, request for discovery, or other pretrial proceedings shall be initiated or filed by any Plaintiff except through Interim Co-Lead Counsel and no other plaintiffs' counsel or firm shall be authorized to perform any work in the case without the express authorization of Interim Co-Lead Counsel." Plaintiff Priego is a member of the putative class in *In re Keystone Data Breach Litigation* because his claims arise from and relate to the same data security incident.

3. This Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b)(1), which states that the notice of removal "shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." Plaintiff served Keystone on December 12, 2022. A true and accurate copy of the return of service is attached as **Exhibit B**.

4. Plaintiff brings claims of negligence, invasion of privacy, breach of implied contract, breach of fiduciary duty, unjust enrichment, bailment, and violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law. Complaint at ¶¶ 52-111. No other pleadings or orders have been filed.

## VENUE AND JURISDICTION

5. This Court has removal jurisdiction and is the proper venue because it is the judicial district and division embracing the Franklin County Court of Common Pleas, the place where the state court action is pending. 28 U.S.C. § 1441(a), 1446(a), 1453(b).

6. Diversity jurisdiction is proper because the Class Action Fairness Act ("CAFA"), codified in pertinent part at 28 U.S.C. § 1332(d), extended the original jurisdiction of federal courts to class actions of 100 members or more, provided there is minimal diversity and the aggregate sum of each individual class member's claims exceeds $5 million, exclusive of interests and costs. *See Judon v. Travelers Property Casualty Co. of America*, 773 F.3d 495, 500 (3d Cir. 2014). Removal is proper once all criteria are met and the Court need not wait for a class to be certified before asserting its federal jurisdiction over the action. 28 U.S.C. § 1332(d)(8).

7. Pursuant to this Court's order, upon removal, this case will be automatically consolidated into *In re Keystone Breach Data Litigation.* As such, it is proper to consider the facts of that first filed case, in which plaintiffs seek to represent a nationwide class of all persons in the United States whose personal information was compromised in the Keystone security incident. Dkt. 19, ¶ 197-198. Plaintiff Priego is necessarily included in that definition. More so, that definition and this Court's consolidation order comport with the purpose of CAFA. Congress enacted

CAFA after finding that some counsel abused the class action process and the concept of diversity jurisdiction by "acting in ways that demonstrate bias against out-of-State defendants" and "making judgments that impose their view of the law on other States and bind the rights of the residents of those States." CAFA, §2, 119 Stat. at 5. Or in other words, to prevent the precise scheme Plaintiff's counsel attempts here.

8. Pursuant to that same consolidation order, this Court directed that "[n]o motion, request for discovery, or other pretrial proceedings shall be initiated or filed by any Plaintiff except through Interim Co-Lead Counsel and no other plaintiffs' counsel or firm shall be authorized to perform any work in the case without the express authorization of Interim Co-Lead Counsel." Plaintiff Priego is a putative class member of *In re Keystone Breach Litigation* because his claims arise from and relate to the same data security incident. Had Plaintiff followed this Court's order and sought the express permission of lead co-counsel before filing a state court action, he would have known that federal jurisdiction is proper.[1]

9. Even if this case were not subject to removal and consolidation, there is no dispute that the potential class, as defined by Plaintiff, contains more than 100 members. Plaintiff purports to bring these causes of action on behalf of "[a]ll

[1] See Defendant's Response to Keystone Rural Health Center Data Breach Jurisdictional Discovery Letter, provided to Lead Co-Counsel on November 30, 2022, and attached here as **Exhibit C**.

persons whose PII and PHI was maintained on Defendant's servers that were compromised in the Data Breach." Complaint at ¶ 40. Keystone mailed notifications to approximately 234,371 addresses (the "notified population"). Therefore, the Class plaintiff seeks to represent exceeds the statutorily required minimum of 100.

10. Geographic minimal diversity for CAFA purposes arises when any member of a class of plaintiffs, not just the class representative, is a citizen of a state different from any defendant. 28 U.S.C. § 1332(d)(1)(D) (defining class members as all "persons (named or unnamed) who fall within the definition" of the proposed class); 28 U.S.C. § 1332(d)(2)(A).

11. For purposes of CAFA, a corporation is "deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). For Keystone, both those places are Pennsylvania. Thus, Defendant Keystone is a citizen of Pennsylvania, and diversity jurisdiction under CAFA is met if at least one named or unnamed class member is a citizen of any state outside Pennsylvania.

12. Keystone acknowledges that "[t]he terms 'resident' and 'citizen' are not interchangeable for diversity purposes and have distinct definitions under the law." *Tucker v. Walmart Stores E., L.P.*, No. 3:18-CV-02284, 2019 WL 2324571, at *3 (M.D. Pa. May 31, 2019). But in this case, where only one member of the notified

population must reside and intend to remain in a state outside Pennsylvania for this Court to invoke its jurisdiction under CAFA, it is improbable that none of the affected persons across the United States has voted, bought a house, paid his taxes, or run a business in a state other than Pennsylvania. *See McCann v. George W. Newman Irrevocable Tr.*, 458 F.3d 281, 286 (3d Cir. 2006) ("Citizenship is synonymous with domicile . . . [i]n determining an individual's domicile, a court considers several factors, including declarations, exercise of political rights, payment of personal taxes, house of residence, and place of business.") (Internal citations omitted). Because at least one of the approximately 220,000 notified persons is most certainly domiciled in a state other than Pennsylvania, minimal diversity exists.

13. Furthermore, neither the "local controversy exception" nor the "home state controversy" exception work to deny subject matter jurisdiction here. *See King v. Mueller*, No. CIV.A. 3:14-1641, 2015 WL 1345174, at *1 (M.D. Pa. Mar. 25, 2015). Invoking the local controversy exception requires Plaintiff to prove, among other things, that "no other class action asserting the same or similar allegations against any of the defendants" had been filed in the preceding three years. 28 U.S.C. § 1332(d)(4)(A). The inquiry into other class actions asks simply whether "similar factual allegations have been made against the defendant in multiple class actions." *Vodenichar v. Halcon Energy Properties, Inc.*, 733 F.3d 497, 509 (3d Cir. 2013).

14. That is precisely the situation here. Specifically, on October 19, 2022, plaintiffs Kylie Breneman and Brandy Arroyo-Ryan filed a class action in this Court against Keystone Rural Health Center alleging that Keystone failed to protect class member's personal information from unauthorized access and disclosure. *Breneman et al v. Keystone Health*, No. 1:22-cv-01643-CCC, (M.D. Pa.) ("Breneman Class Action"), attached as **Exhibit D**. Based on these similar allegations, plaintiffs asserted similar claims for negligence, negligence per se, breach of fiduciary duty, unjust enrichment, and breach of implied contract. There can be no dispute that the Breneman Class Action was filed within three years of this case, involves the same factual allegations as those at issue in this case, and is against the same defendants, rendering the local controversy exception inapplicable.

15. Moreover, "when a controversy results in the filing of multiple class actions, it is a strong signal that those cases may not be of the variety that the local controversy exception is intended to address." (Citations omitted). *Vodenichar* at 508. Since the filing of the Breneman Class Action, no less than seven other class action complaints have been filed between this Court and the Franklin County Court of Common Pleas—nine when counting the two dismissed in federal court and refiled in state court.[2] This Court already consolidated four of the *Breneman* copycat

[2] In addition to the Breneman Class Action and the state court action at issue for removal here, the following cases based on the same factual allegations have been filed: *Whitehead et al v. Keystone Health*, Case No. 1:22-cv-01678-CCC (M.D. Pa.)

cases, two of which were first removed from state court, and Plaintiff's complaint should fare no differently. The local controversy is not applicable here.

16. The second exception to subject matter jurisdiction, the "home state exception," would require the party seeking to invoke this exception to first establish that the citizenship of the members of two-thirds or more of the identified persons is Pennsylvania. *Id*. at 503. Plaintiff could never make such a demonstration without speaking directly to every person notified at a Pennsylvania address to ascertain whether it was "his true, fixed and permanent home and place of habitation" and "the place to which, whenever he is absent, he has the intention of returning." *Corrrado v. Timber Ridge Health Care Ctr*., No. 3:17-CV-123, 2017 WL 2288858, at *3 (M.D. Pa. May 25, 2017).

17. The second exception to subject matter jurisdiction, the "home state exception," would require the party seeking to invoke this exception to first establish that the citizenship of the members of two-thirds or more of the identified persons is

(consolidated on Nov. 14, 2022); *Nickey v. Keystone Rural Health Center*, Case No. 1:22-cv-01842 (M.D. Pa.) (consolidated on Dec. 7, 2022); *Johnson v. Keystone Rural Health Center*, Case No. 1:22-cv-01836 (M.D. Pa.) (removed and ultimately consolidated on Dec. 7, 2022); *John Hagle et al v. Keystone Rural Health Center*, Franklin County Court of Common Pleas Case No. 2022-3491 (same); *Alexandra Brake*, *Individually and on behalf of her son, T.B., v. Keystone Rural Health Center*, Case No. 1:22-cv-01784 (voluntarily dismissed and refiled in state court);; *Kathleen Hoos v. Keystone Rural Health Center*, Case No. 1:22-cv- 1817 (M.D. Pa.) (same); *Priego v. Keystone Rural Health Center*, Franklin County Court of Common Pleas Case No. 2022-3653; and *Hoos v. Keystone Rural Health Center*, Franklin County Court of Common Pleas Case No. 2022-3709.

Pennsylvania. *Id*. at 503. Plaintiff could never make such a demonstration without speaking directly to every person notified at a Pennsylvania address to ascertain whether it was "his true, fixed and permanent home and place of habitation" and "the place to which, whenever he is absent, he has the intention of returning." *Corrrado v. Timber Ridge Health Care Ctr*., No. 3:17-CV-123, 2017 WL 2288858, at *3 (M.D. Pa. May 25, 2017).

18. That is especially true here given Defendant, formerly known as the Keystone Migrant Health Center, has a stated mission of providing services to temporary migrant agricultural workers. In fact, Keystone is the sole grantee in Pennsylvania providing services to temporary migrant agricultural workers across the state who very likely lack the intent to remain in Pennsylvania.[3] By definition of the Pennsylvania Department of Agriculture, Defendant is providing services under this grant only to individuals employed on a seasonal or other temporary basis.[4] In addition, there are 22 colleges within 50 miles of the Defendant's primary health care locations in Chambersburg, Pennsylvania.[5]

19. For example, multiple persons were notified at the following locations: the harvest worker camp locations possibly associated with Bonnie Brae Fruit Farms, the address for Vallorani Mushrooms, the South Mountain Restoration Center (a

---

[3] https://keystonehealth.org/keystoneagworkerprogram/.

[4] https://www.agriculture.pa.gov/Business_Industry/Farm%20Labor%20Camp%20Housing/pages/default.aspx.

[5] https://www.collegesimply.com/colleges-near/pennsylvania/chambersburg/.

residential facility assisting individuals in recovery with the stated goal of helping "residents return to their home in their community"), the mailing address for Penn State Mont Alto and Mercersburg Academy and the address of a student apartment complex near Shippensburg. Given the specific population of the persons served by Defendant, it is more likely than not that less than two-thirds of the persons consider a Pennsylvania address "his true, fixed and permanent home and place of habitation."

20. According to the documentation currently in Keystone's possession, more than one third of notified persons are likely not even residents of Pennsylvania, let alone citizens. Approximately six percent of the 234,371 notification letters were mailed to addresses outside Pennsylvania. Over 44% duplicate at least five times, strongly suggesting that some are former residents and/or are not current citizens. Considering that Pennsylvania's average household size is only 2.48 persons per household, it is possible any address appearing more than three times includes at least one non-resident.[6] That puts the residency of almost half the persons notified in doubt. And where it is not possible to determine whether almost half the proposed class still resides in Pennsylvania, it is certainly not possible to ascertain their intent to remain there indefinitely.

21. Lastly, for this Court to invoke its jurisdiction under CAFA, the amount in

---

[6] https://www.census-charts.com/HF/Pennsylvania.html.

controversy must exceed the sum or value of $5 million, exclusive of interests and costs. 28 U.S.C. § 1332(d)(2). CAFA directs courts to aggregate the claims of all class members when determining whether this jurisdictional threshold is met. 28 U.S.C. § 1332(d)(6).

22. The plaintiff is master of its complaint and, "[i]n removal cases, determining the amount in controversy begins with a reading of the complaint filed in the state court." *Samuel-Bassett v. KIA Motors America, Inc.*, 357 F.3d 392, 398-399 (3d Cir. 2004). Where, as here, the complaint lacks a specified amount of monetary relief, the defendant's notice of removal "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). This burden is easily met by looking to the last cause of action in Plaintiff's complaint because the statute at issue defines the universe of available remedies.

23. Count 6 of Plaintiff's complaint alleges that Keystone engaged in unfair or deceptive acts in violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). For this alleged violation, Plaintiffs seek actual damages, $100, or three times their actual damages, whichever is greatest, plus costs and reasonable attorney fees. As the Western District of Pennsylvania recently pointed out, any class action asserting violations of the UTPCPL with more than 16,667 members exceeds the $5 million jurisdictional threshold. *See Fox v. Chipotle*

*Mexican Grill, Inc.*, No. 2:20-CV-1448, 2021 WL 706757, at *6 (W.D. Pa. Feb. 23, 2021) ("As a result, the minimum $5,000,000 amount in controversy can be reached by 16,667 alleged violations of the UTPCPL, if the Court trebles $100 minimum statutory damages to $300.").

24. Just like the plaintiffs in *Chipotle*, Plaintiffs seek damages in Count 6 of their complaint under 73 Pa. Cons. Stat. § 201-9.2(a). And just like the *Chipotle* plaintiffs, Plaintiffs here seek the greater of actual damages, $100, or trebled damages. The difference is that Plaintiffs' proposed class far exceeds 16,667 members. Invoking this Court's federal jurisdiction for the allegations in Count 6 is even more proper here than in *Chipotle* because this calculation does not rest on the specter of treble damages.

25. Where the amount per claim is apparent from the face of the complaint, "the number of class members will determine the amount in controversy through the operation of simple multiplication." *Lewis v. Ford Motor Co.*, 610 F. Supp. 2d 476, 486 (W.D. Pa. 2009). The UTPCPL violation asserted by Plaintiff against Keystone carries a statutorily mandated award of at least $100. 73 P.S. § 201-9.2(a) ("The court may, in its discretion, award up to three times the actual damages sustained, *but not less than one hundred dollars*." (Emphasis added)). Based on the Plaintiff's purported class of 234,371 members, even the nominal award of $100 per violation of the UTPCPL would amount to damages of $23,437,100—before the addition of

reasonable costs, attorney fees, or treble damages. Simple math compels the legal certainty that the amount in controversy for Count 6 alone far exceeds $5 million on the face of the complaint.

26. While the other causes of action contain no allegations supporting or suggesting the amount of actual damages to which identified persons would be entitled for those claims, Plaintiff alleges that one injury suffered is the "greatly enhanced risk of credit fraud or identity theft." Complaint at ¶ 61. The cost of credit monitoring is a type of out-of-pocket expense commonly associated with the prevention, detection, and recovery that Plaintiff alleges he and the Class are at risk of in the future.

27. The three main identity-protection agencies—Equifax, LifeLock, and Experian—advertise monthly rates for credit-monitoring services ranging from $14.99 to $19.95 per person per month. Multiplying just the cost of providing two months of credit-monitoring services at $14.99 (the cheapest of the three products) by the number of Plaintiff's proposed class members, the amount in controversy for credit monitoring is approximately $7,023,444.58 (calculated as: 234,271 Pennsylvania individuals notified, times 2 months, times $14.99 per month).

28. Accordingly, the three criteria for federal jurisdiction are satisfied. The notified population exceeds 100 members, it includes people across the United States while Keystone is a citizen of Pennsylvania, creating minimal geographic diversity,

and the amount in controversy exceeds $5 million. No exception exists and removal to federal court is proper.

29. Pursuant to 28 U.S.C. § 1446(d), Defendant is providing written notice of removal to Plaintiffs and will file a copy of this Notice of Removal in the Franklin County Court of Common Pleas. A copy of the Notice of Filing of Notice of Removal is attached hereto as **Exhibit E**. Pursuant to Federal Rule of Procedure 7.1, Keystone's corporate disclosure statement is attached as **Exhibit F**.

30. For the foregoing reasons, Defendant Keystone Rural Health Center respectfully requests that the Court remove this action, pending in the Franklin County Court of Common Pleas, to the United States District Court for the Middle District of Pennsylvania.

Dated: December 20, 2022

Respectfully submitted,

*/s/ Carrie Dettmer Slye*

Carrie Dettmer Slye (admitted *pro hac vice*)
BAKER & HOSTETLER LLP
312 Walnut Street
Suite 3200
Cincinnati, Ohio 45202-4074
Telephone: 513.929.3400
cdettmerslye@bakerlaw.com

Casie D. Collignon (admitted pro hac vice)
BAKER & HOSTETLER LLP
1801 California Street, Suite 4400
Denver, CO 80202-2662

Telephone: 303.861.0600
ccollignon@bakerlaw.com

*Attorneys for Defendant Keystone Rural Health Center*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 20, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Carrie Dettmer Slye*
Carrie Dettmer Slye